**UNITED STATES of America**

v.

**John SANZA.**

**Crim. No. K–77–0366, Civ. No. K–80–2071.**

United States District Court, D. Maryland.

Dec. 29, 1980.

On Motion For Release Paneling Appeal March 2, 1981.

Russell T. Baker, Jr., U. S. Atty., and Marsha A. Ostrer, Asst. U. S. Atty., Baltimore, Md., for United States.

Joseph Kiel and Burton W. Sandler, Towson, Md., for Sanza.

**FRANK A. KAUFMAN, District Judge.**

Sanza was convicted in this Court of possession of firearms by a previously convicted felon, in violation of 18 U.S.C. App. § 1202(a)(1), on October 27, 1977 and sentenced on January 12, 1978 to two years' confinement, the maximum possible penalty, subject to 18 U.S.C. § 4205(b)(2). In a per curiam opinion filed July 24, 1979 by the United States Court of Appeals for the Fourth Circuit, that conviction was affirmed. 603 F.2d 219. The Supreme Court denied Sanza's petition for certiorari on March 24, 1980. Following that denial, Sanza sought reduction of sentence under Federal Criminal Rule 35. In connection therewith, Sanza was represented by counsel other than counsel who had earlier represented him, and Sanza's new counsel raised for the first time the contention that Sanza had been convicted on an agreed

> statement of facts that I [new defense counsel] feel, Your Honor, leaves a lot to be desired.
>
> And he [Sanza] did that for only one reason. He [Sanza] was practically assured by that attorney [the attorney who represented Sanza both at trial and on appeal] that he would not serve any time as a result of the conviction in this case, in the event that he did, that there certainly would be a reversal on appeal."[1]

This Court has denied Sanza's motion for reduction of sentence because of his prior record and the nature of the offense involved in this case. There presently remains pending before this Court Sanza's habeas corpus petition pursuant to 28 U.S.C. § 2255. In connection therewith, after conducting an evidentiary hearing during which both Sanza and his trial counsel testified, this Court orally found on the record that Sanza had been fully advised by his counsel as to the format and procedure to be followed at his trial on an agreed statement of facts, had knowingly and voluntarily agreed to proceed on such a basis, and had, upon the advice of his trial counsel, so done in order to preserve his opportunity to appeal from the denial of his motion to suppress certain evidence.[2] It was in

---

1. Tr. 7/2/80 at 33.

2. Tr. 7/21/80 at 159–63. At several points during the hearings on January 12, 1978 and thereafter, including hearings during the present calendar year of 1980, this Court erroneously and inadvertently referred to the submission of a guilty plea by Sanza rather than to the submission of the case on agreed facts. Tr. 6/3/80 at 3–4; Tr. 1/12/78 at 66. In the opinion of this Court, the record is more than clear that this Court at all times, however, has understood that this case proceeded upon a not-guilty plea, and upon an agreed statement of facts.

28

connection with that suppression issue only that Sanza instituted his unsuccessful appeal to the Fourth Circuit.

Also, after holding the aforementioned evidentiary hearing, this Court orally found on the record that Sanza's trial counsel did not advise Sanza that he would prevail either in this Court or on appeal upon the motion to suppress and did not advise Sanza that he would not serve time if a conviction resulted in this case.[3]

This Court, after reviewing the entire record in this case, hereby reaffirms all of its oral findings, holdings and conclusions previously made and stated on the record in connection with the matters discussed hereinabove in this opinion.

■ During a number of proceedings, this Court has also considered, both in the context of Sanza's unsuccessful motion for reduction of sentence under Federal Criminal Rule 35 and in the context of an orally stated motion made on behalf of Sanza by his counsel for habeas corpus relief pursuant to 28 U.S.C. § 2255, the question of whether Sanza's conviction rested upon sufficient evidence. Additionally, this Court has considered, despite disclaimers to the contrary by Sanza's counsel who entered this case for the first time after the Supreme Court's denial of certiorari, that at least in part Sanza's quest for relief under 28 U.S.C. § 2255 is based upon alleged inadequate representation of Sanza by trial counsel. Before proceeding to discuss the question of whether or not the record contains sufficient evidence to support Sanza's conviction, this Court again addresses itself to the question of adequacy of representation by Sanza's trial counsel and concludes that that representation was more than adequate. There are many instances in the record which indicate the care taken by such counsel.[4] Further, the record in its totality indicates the pursuit by trial counsel of the only line of defense which he thought was tenable, namely, the effort to suppress evidence without which the Government would rather clearly have not been able to sustain its burden of proving Sanza guilty as charged beyond a reasonable doubt.

■ From the time of their first appearance in this case, Sanza's present counsel have argued or suggested that it *might* have been possible for Sanza to have defended at trial on the grounds that the guns involved had not traveled in interstate commerce, that the guns were not operable and that Sanza did not possess the guns. Whether or not the guns were operable is irrelevant and immaterial since operability of the guns is not an element of the offense.[5] As to the interstate commerce point, the Government needed only to prove beyond a reasonable doubt that Sanza did possess one or more guns which had passed, "at some time, in interstate commerce." *Scarborough v. United States*, 431 U.S. 563, 575, 97 S.Ct. 1963, 1969, 52 L.Ed.2d 582 (1977).[6] During the trial on agreed facts, the Assistant United States Attorney representing the Government stated that if the case had gone to trial on a controverted basis, a Special Agent of the Federal Bureau of Alcohol, Tobacco and Firearms would have testified that he (that Special Agent) had "ascertained [that] neither * * brand of firearms * * * are manufactured in the State of Maryland" and that "[t]herefore, they were transported into the State of Maryland."[7] Sanza and his counsel both agreed during that trial proceeding that that factual statement was correct.[8]

3. Tr. 7/21/80 at 160–63.

4. *See, e. g.,* Tr. 10/14/77 at 17–18; Tr. 10/27/77 at 26–27; Tr. 1/4/78 at 43–46.

5. *See United States v. Pleasant*, 469 F.2d 1121, 1125 (8th Cir. 1972), *cert. denied*, 416 U.S. 989, 94 S.Ct. 2398, 40 L.Ed.2d 768 (1974).

6. *See also United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). A "con-temporaneous nexus" with interstate commerce is not required. *Scarborough, supra*, 431 U.S. at 567 n.4 and 575 n.11, 97 S.Ct. at 1965 n.4 and 1969 n.11.

7. Tr. 10/27/77 at 34.

8. Tr. 10/27/77 at 34.

Insofar as the possession issue is concerned, government counsel stated during the hearing on October 27, 1977 that during the course of a search of "the residence of John Sanza, 17 West Mulberry, basement apartment, Baltimore, Maryland," two Baltimore City police officers found the two firearms which are the subject of the indictment; that during the said search those officers "observed a C and P telephone bill addressed to Mr. Sanza"; that " [i]t did not appear to them [the two police officers] that anybody else resided in the residence with Mr. Sanza"; and that the two firearms, i. e., one Winchester rifle and one Savage rifle "were found in the hall closet of that residence." The applicable criminal history record of Sanza was also stated by the Assistant United States Attorney during the trial. Additionally, government counsel stated that the police officers had found in the "same closet [in which the firearms were found], a cardboard box * * which contained a number of cancelled checks and various other items, all reflecting the name of John Sanza." [9]

At trial, after the Assistant United States Attorney made her statement, trial counsel for Sanza stated that what had been stated by government counsel was "accurate" and that there were no "corrections or deletions, to the facts." Thereafter, this Court asked Sanza "Is that right,

Mr. Sanza?" and Sanza replied "Yes, sir." [10] During the sentencing hearing on January 4, 1978, which preceded the original imposition of sentence and the entry of the judgment of conviction from which Sanza appealed to the Fourth Circuit, trial counsel for Sanza indicated Sanza's desire to present "mitigating circumstances." [11] Accordingly, the sentencing hearing was continued until a date eight days later. During the hearing on that latter date, this Court, after reviewing the presentence report—about which this Court will comment further *infra*—at one point became concerned as to whether Sanza was contending that he had not had possession of the firearms in question and stated that if Sanza was so contending, "I am not sure that I would permit the guilty plea to stand in this case." [12]

The presentence report sets forth Sanza's version of the facts in this case as related to Mr. Edward V. Watts, Probation Officer of this Court.[13] During the sentencing hearing on January 4, 1978, this Court asked Sanza's counsel whether he (such counsel) had seen the presentence report, whether he had discussed its contents with his client, Mr. Sanza, and whether there were any "factual corrections, additions or the like." [14] Trial counsel for Sanza stated that he had discussed the contents with his client

---

9. Tr. 10/27/77 at 31–34.

10. Tr. 10/27/77 at 34.

11. Tr. 1/4/78 at 47, 50.

12. Tr. 1/12/78 at 66. *See* n.2 *supra* with regard to this Court's inadvertent reference to a guilty plea.

13. The presentence report dated November 25, 1977 includes the following at pp. 2–3:

The defendant related to the probation officer that in July 1977, a former friend, John Taylor, asked him to keep two .22 caliber rifles, while Taylor went to New York. According to Taylor, he was driving by automobile to New York and did not want the rifles in his car. About a week later the local police came to his apartment with a search warrant for two .22 caliber rifles. Neither of the rifles mentioned in the warrant matched the two rifles he was keeping for Taylor. Apparently, the police told the A.T.F. people

about the two other rifles he was keeping for Taylor. A.T.F. came with a warrant and charged him with the unlawful possession of the rifles as a convicted felon. Although he knows it now, he claims that he was unaware that he could not have any kind of firearms in his possession.

When asked how he thought the authorities became aware of the rifles, he said "John Taylor told them. I saw a police report in which Taylor had said that I was a gun dealer". Mr. Sanza, however, denies he has ever been an illegal gun dealer. Later in our interview, the defendant stated that Taylor actually had asked John Lockett, who was living with the defendant at that time, to keep the rifles. The police, however, would not charge Lockett because the apartment was rented in the defendant's name, therefore, he technically had possession of the firearms.

14. Tr. 1/4/78 at 40.

and that there were no factual corrections, additions or the like. It is to be noted that Sanza's version of the offense, contained in the presentence report, includes Sanza's admission of possession.

At one or more times to and including the final hearing held by this Court on October 23, 1980, this Court afforded to Sanza the opportunity to take the witness stand to give any testimony which he desired to give concerning the element of possession[15] and/or also offered to Sanza the opportunity to have his trial counsel take the stand and testify with regard to any information which trial counsel had with regard to the element of possession.[16] Counsel for Sanza, during the last hearing in this case on October 23, 1980, objected to having Sanza's trial counsel take the witness stand to give any evidence with regard to what he (such trial counsel) had learned in 1977 concerning the element of possession. That objection was made by Sanza on Fifth Amendment grounds. This Court had and continues to have some question as to whether or not Sanza had not waived his right to object to his trial counsel's testimony, in view of what this Court construes to be an attack by Sanza's new counsel on the adequacy of representation by Sanza's trial counsel.[17] However, this Court on October 23, 1980 sustained Sanza's objection to having his trial counsel testify with regard to the element of possession.

█ Sanza continues to contend that there was not sufficient evidence of possession introduced during the presentation by government counsel of the agreed statement of facts at trial to have permitted this Court then to have found Sanza guilty beyond a reasonable doubt under the standards set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *reh. denied*, 444 U.S. 890, 100 S.Ct. 195, 62

L.Ed.2d 126 (1979). This Court disagrees. In effect, counsel for Sanza continues to advance at this time arguments which *could* have been made to the fact-finder during trial, whether before a jury or the Court and whether the trial had proceeded in the usual controverted testimonial manner or on an agreed statement of facts. The Government's statement of where the firearms were found and the agreement by Sanza and his counsel to that statement[18] were sufficient in and of themselves to support a finding beyond a reasonable doubt of Sanza's possession of the two firearms. Additionally, Sanza's version of the offense in the presentence report supports that conclusion. Indeed, during a hearing held on January 12, 1978, Sanza admitted to such possession on the record.[19] Finally, at several times prior to the conclusion of the sentencing and the entry of a judgment of conviction on January 12, 1978, Sanza's trial counsel stated in Sanza's presence that Sanza admitted possession and that Sanza's desire to present information as to how he (Sanza) came to have possession of the two firearms was related not to Sanza's denial of guilt, but only to Sanza's claim of "mitigating circumstances"[20] to support his position that a less-than-maximum sentence should be imposed.

When this case was originally docketed and assigned to the undersigned member of this Court, this Court did conduct in chambers a short pre-trial scheduling conference with counsel for the Government and trial counsel for Sanza. That conference was not held on the record. At that conference, counsel for the Government conceded that the Government's case depended upon using the evidence which Sanza sought to suppress and counsel for Sanza stated that Sanza stood on his not-guilty plea but was defending solely on his suppression-motion position. This Court does not herein rely

15. Tr. 1/12/78 at 64.

16. Tr. 10/7/80 at 193–94.

17. *See* the Court's attached Memorandum and Order in *Crisp v. United States*, Criminal No. K–75–0420 and Civil No. K–77–552 (D.Md. June 6, 1977), and cases cited therein.

18. *See* n.10 *supra*.

19. Tr. 1/12/78 at 68.

20. Tr. 1/12/78 at 67–68; Tr. 1/4/78 at 47, 50.

upon anything so stated to it in chambers by counsel or anything other than what appears in the record in this case. But this Court does state that at no time has it learned either on or off the record from counsel for Sanza or from government counsel anything which causes it to doubt in the slightest that Sanza did in fact possess the two firearms.

 There remains the issue of whether or not this Court appropriately found Sanza guilty upon the agreed statement of facts on October 27, 1977 without engaging during that proceeding in a full Federal Criminal Rule 11 litany.[21] While it may be advisable for the trial judge, when a non-jury case is tried before him, upon an agreed statement of facts, to give "at least some of the advices enumerated in Rule 11(c)," and that such advices "would be helpful in impressing upon defendant the significance of the choice he has purportedly made," *United States v. Strother*, 578 F.2d 397, 404 (D.C.Cir.1978) (McGowan, J.), submission upon an agreed statement of facts is quite different than the tender of a guilty plea. *See Lefkowitz v. Newsome*, 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975);[22] *United States v. Zudick*, 523 F.2d 848, 852 (3d Cir. 1975); *United States v. Romanello*, 425 F.Supp. 304, 308 (D.Conn. 1975) (Newman, J. then a District Judge). A trial judge is required in any case to be as sure as the trial judge can be that counsel for the defendant is proceeding in accordance with "his client's expressed desire," *Brookhart v. Janis*, 384 U.S. 1, 7, 86 S.Ct. 1245, 1248, 16 L.Ed.2d 314 (1966), that the defendant understands exactly what his attorney is doing and that the defendant is competent to understand and to approve what his attorney is doing. That is particularly true when a case is submitted to the trier of facts on an agreed statement of facts rather than in the more usual controverted context. *See United States v. Brown*, 428 F.2d 1100, 1103 (D.C.Cir.1970). However, the defendant need not personally waive each and every one of his rights, including his right to require the Government to produce its testimony in the normal way, subject to the defendant's right of confrontation. Defense counsel may speak for his client in a criminal case when he is entering into stipulations. *See United States v. Stephens*, 609 F.2d 230, 232–33 (5th Cir. 1980); *Wilson v. Gray*, 345 F.2d 282, 286–90 (9th Cir.), *cert. denied*, 382 U.S. 919, 86 S.Ct. 288, 15 L.Ed.2d 234 (1965). In this case, the Court specifically advised Sanza of his "Constitutional right to a jury trial, and an absolute right to a jury trial which nobody can take away from you" and ascertained that Sanza understood that right and that Sanza desired to waive jury trial and "to proceed in this case on the basis of an agreed statement of facts." Sanza personally informed the Court of his understanding of his right to a jury trial and of his desire to waive that right and to proceed on the basis of an agreed statement of facts. In addition, Sanza's trial counsel stated, immediately after Sanza had so advised this Court, that he (trial counsel) "further advised Mr. Sanza he has a right to confront witnesses and cross-examine witnesses; and by proceeding on the statement of facts, he does in fact waive that particular right." Additionally, this Court then engaged in the following colloquy with Sanza's trial counsel:

21. Whether Sanza is foreclosed from raising in the context of his within 28 U.S.C. § 2255 petition the agreed-statement-of-facts issue, and/or any other issues discussed in this opinion, because Sanza did not raise such issue or issues during trial or on appeal is a question to which the Government has not alluded, which none of counsel have briefed and which this Court does not reach herein in view of its disposition of this case.

22. While the validity of some of the statements in *Lefkowitz*, concerning whether a habeas corpus petitioner is barred by his failure to exercise opportunities to raise at trial or on appeal certain issues, may be questionable, *Stone v. Powell*, 428 U.S. 465, 480 n.14, 96 S.Ct. 3037, 3045 n.14, 49 L.Ed.2d 1067 (1976); *Journigan v. Duffy*, 552 F.2d 283, 286 n.3 (9th Cir. 1977), the approach in *Lefkowitz* concerning the differences between guilty pleas which foreclose appeals on all or almost all issues and guilty pleas which preserve certain issues for appeal would still appear to be valid.

THE COURT: I understand you stated in open Court that your client does not contest the facts. He agrees with the facts as the Government states them to be, subject to your hearing them today and verifying them and Mr. Sanza verifying them.

But your position is that the evidence that the Government obtained was obtained by unconstitutional means, or it is tainted by the use of unconstitutional means in the course of discovering other evidence which led to this evidence?

MR. MAXWELL: That's correct.

THE COURT: It is that point you want to preserve for appeal?

MR. MAXWELL: That's correct.[23]

Accordingly, even if *United States v. Stephens, supra,* and *Wilson v. Gray, supra,* stand for the proposition that trial counsel can waive the rights of a defendant in a criminal case, (1) only in the presence of the defendant and (2) only when matters of trial tactics are involved; and even if it be conceded, *arguendo* only, that more than trial tactics were involved herein in the agreed-statement-of-facts procedure followed at trial in this case, Sanza is still not entitled to relief. That is because Sanza was advised and questioned on the record by the Court as to whether he (Sanza) wanted to proceed on submission of agreed facts and because Sanza heard his trial counsel, on the record, inform this Court of advice trial counsel had previously given to Sanza and heard his trial counsel state that Sanza understood his trial rights and that Sanza desired to go forward in accordance with the procedure which was followed.

Federal Criminal Rule 11 deals with pleas of guilty and nolo contendere. It does not at the present time explicitly permit the entry of conditional pleas. There was circulated among bar and bench, in November, 1979, a proposal of the Criminal Rules Committee of the Judicial Conference of the United States to amend Federal Criminal Rule 11(a) to permit conditional pleas.[24] However, that amendment has not to date been adopted. If it were adopted, it would appear to require that the full Rule 11 litany would need to be given by a trial judge any time a conditional plea of guilty is tendered. But, in its current form, Rule 11 does not so require. *See United States v. Stapleton,* 600 F.2d 780, 782 (9th Cir. 1979); *United States v. Strother, supra; United States v. Lawriw,* 568 F.2d 98, 105 n.13 (8th Cir. 1977), *cert. denied,* 435 U.S. 969, 98 S.Ct. 1607, 56 L.Ed.2d 60 (1978), *reh. denied,* 436 U.S. 951, 98 S.Ct. 2860, 56 L.Ed.2d 794 (1978); *United States v. Terrack,* 515 F.2d 558, 560–61 (9th Cir. 1975). *But see Julian v. United States,* 236 F.2d 155 (6th Cir. 1956). Judge Allen in *Julian* stated (at 158): "In this case it is not contended that defendant acquiesced in or approved of the stipulations of defense counsel." In *Brookhart v. Janis, supra,* 384 U.S. at 8, 86 S.Ct. at 1249, the Supreme Court granted habeas corpus relief because "petitioner neither personally waived his right nor acquiesced in his lawyer's attempted waiver * * *." It is also to be noted that in *Julian,* Judge Allen (at 158) wrote:

The element of felonious intent essential to conviction could not be stipulated by counsel. The admission on this point was a statement as to defendant's mental attitude and purpose. It constituted the controlling issue in the case and counsel's stipulation thereon could not form the basis of a valid conviction. [Citation omitted.] The conclusion as to the existence or non-existence of criminal intent was to be drawn by the trier of the facts. Moreover, the judge should have determined whether defendant personally admitted felonious intent. Since he considered that the stipulations amounted to a plea of guilty, he should have inquired

23. Tr. 10/27/77 at 24–25.

24. *See* Preliminary Draft of Proposed Amendments to the Federal Rules of Criminal Procedure, circulated to bench and bar in November, 1979 by the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States. Copies of pages 4 and 6–11 thereof, and the discussion therein of the cases approving and disapproving of conditional pleas, have been placed in the court file in this case.

whether defendant understood the charge and voluntarily acquiesced in the stipulations. Such action would have complied with Rule 11.

In *Julian*, Judge Allen equated the submission of the case on an agreed statement of facts with a guilty plea tender. Subsequent cases, including *Lefkowitz*, would seem to suggest to the opposite. But, in any event, the issues presented in *Julian* were different than those presented herein. In the within case, Sanza's "mental attitude and purpose" are not "the controlling issue" as was the case in *Julian*. *Id.* at 158. To secure a conviction under 18 U.S.C.App.

§ 1202(a)(1), no element of scienter, other than a knowing possession of the firearm, need be proved.[25] In this case, the circumstances under which the guns were found and Sanza's own version of his receipt of them establish his knowing possession of them.[26] Further, in the within case, this Court addressed Sanza personally and asked him whether his counsel's agreement with the statement of facts made by government counsel was "right" and Sanza responded "Yes, sir."[27]

The presentence report in this case indicates that Sanza has had prior experience with the criminal process,[28] and that his

**25.** *United States v. Horton*, 503 F.2d 810, 813 (7th Cir. 1974); *United States v. Harvill*, 501 F.2d 295, 297 n.3 (9th Cir. 1974); *United States v. Mostad*, 485 F.2d 199, 200 (8th Cir. 1973), *cert. denied*, 415 U.S. 947, 94 S.Ct. 1468, 39 L.Ed.2d 563 (1974); *United States v. Wiley*, 478 F.2d 415, 417–18 (8th Cir. 1973), *cert. denied*, 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974); *United States v. Snell*, 353 F.Supp. 280, 284–85 (D.Md.1973) (Young, J.).

**26.** *See* in particular Tr. 10/27/77 at 31–34; Tr. 1/12/78 at 60–68; and the portion of the presentence report reproduced at n.13 *supra*.

**27.** Tr. 10/27/77 at 34.

**28.** The presentence report dated November 25, 1977 at pp. 3–5 includes the following:

PRIOR RECORD:
Juvenile.

| | |
|---|---|
| 1939 (Age 10) | Juvenile Court Arlington, Virginia. Housebreaking. Committed for approximately three years to the Virginia Industrial Home School in Beaumont, Virginia. |
| 4–14–46 (Age 17) | Miami, Florida. Arrested for investigation of running away from New York City. On 4–20–46 he was released from custody. |
| 8–28–46 (Age 17) | New York City, New York. Grand Larceny of an automobile. Subject held for 56 days and released without any action being taken. |

Adult.

| | |
|---|---|
| 1948 (Age 19) | Mr. Sanza recalls that while he was in the Air Force he was arrested for assault and drunk and disorderly conduct. The assault was on a sheriff in Clarendon, Texas. He was fined $150.00 or 10 days in jail. He elected to serve the 10 days in jail. No attorney. |
| 1949 (Age 20) | New York City. The defendant recalls being arrested for being drunk and disorderly on a public street. He received a reprimand and was released. |
| 1962 (Age 33) | Washington, D.C. Drunk and disorderly conduct. Forfeited $10.00 collateral. No attorney. |
| 12–27–64 (Age 35) | Washington, D.C. Housebreaking. Charges dismissed upon making restitution. Subject was working at the time for Hank Reem- |

PRIOR RECORD:
Adult.

| | |
|---|---|
| 12–27–64 (Age 35) | snyder's Variety Arcade on New York Avenue in the District of Columbia. He used a key to get into the establishment after it was closed and took $200.00 from a locker. He repaid all but $50.00. No attorney. |
| 10–18–65 (Age 36) | Federal Bureau of Investigation, District of Maryland. Under Title 18 U.S.C., Sections 2314 and 2. Mr. Sanza was charged with six counts of Interstate Transportation of Falsely Made and Forged Securities. He pled guilty to the third count charging him with unlawfully transporting a falsely made $100.00 Traveler's Express Company money order. This particular money order was one of 900 Traveler's Express Company money orders that had been stolen in a burglary from a store in New York City on 3–5–65. When the defendant was arrested he claimed that he had found approximately 80 of the money orders, all made out for $100.00 in an envelope in a bar in Washington, D.C. on 8–19–65. Records of the U.S. Bureau of Prisons indicate that he later admitted that he received the 80 money orders from his cousin, John Russo. On 3–4–66 in the U.S. District Court, Maryland, Judge Watkins sentenced the defendant to four years under 4208(a)(2). On 3–18–66 the Court reduced the sentence to three years. Mr. Sanza was represented by Joseph Kaplan. After serving approximately one year of his sentence, Sanza was paroled from Lewisburg on 3–16–67. Parole records reflect that his supervision expired on 3–13–69. During the two years he was under supervision he reported regularly to the parole officer and was not arrested during the parole period. He held numerous jobs in the Baltimore City area, Ocean City, Maryland and in Washington, D.C. as a chef in restaurants and operating or managing pornographic book stores. All during this period, however, he maintained an apartment at 17 West Mulberry Street in Baltimore which still remains his present address. Mr. Sanza impressed his former parole officer as being an individual who would always prefer to socialize and work around activities associated with exotic strip parlors, specifically in Baltimore, the area known as the Block. In summary, it was the opinion of the parole |

level of intelligence was sufficient to enable him to understand the procedures followed before and during trial.[29]

There is no reason to believe that Sanza did not fully understand either the advice which this Court finds he received from this Court and from his counsel and the choices which he made and which were made on his behalf by his trial counsel and why they were made. Finally, this Court is satisfied that under the standards set forth in *Jackson v. Virginia, supra,* the record contains more than sufficient evidence to sustain a finding of guilt beyond a reasonable doubt of the crime with which Sanza was charged and of which he was convicted and sentenced in the within case. Accordingly, this Court will enter an Order denying the relief sought herein by Sanza under Federal Criminal Rule 35 and 28 U.S.C. § 2255.

## ON MOTION FOR RELEASE PENDING APPEAL

On December 29, 1980, this Court filed an opinion in this case denying relief sought by Sanza under Federal Criminal Rule 35 and 28 U.S.C. § 2255. Sanza has appealed from said denial to the United States Court of Appeals for the Fourth Circuit. That appeal is presently pending. Additionally, on February 2, 1981, Sanza filed a Motion for Release Pending Appeal from Denial of Relief under 28 U.S.C. § 2255. In said motion, Sanza's counsel have stated, *inter alia,* that during the hearing held on October 23, 1980, "this Court indicated that in the event the Court denied '2255' relief but felt that the questions raised were close, the court would consider releasing the Defendant pending resolution of any appeal." (Sanza's 2/2/81 motion, p. 3).

The following paragraph appears at page 280 of the transcript of proceedings before this Court on October 23, 1980:

I will write an Opinion as fast as I can get to it. If I come to the conclusion that this question is close, on not the Rule 11 litany point but on the sufficiency of the statement of facts, then I may well give consideration to whether or not I ought to release the defendant from custody pending appeal if I rule against Mr. Sanza.

PRIOR RECORD:
 Adult.

10-18-65 officer that Mr. Sanza gained little from his
(Age 36) experience in prison or while on parole, although he completed parole supervision without any violations of the parole conditions.

On 7-17-73, the defendant filed a petition for pardon of his federal offense with the United States Department of Justice. In the petition he stated that the reason for his requesting the pardon was that he wanted to regain the right to vote. Furthermore, he stated that he had striven since his release from prison to be a conscientious and law abiding citizen although he admitted in the petition that he had been convicted of a misdemeanor in Norfolk, Virginia in 1972. On 6-24-74 Mr. Sanza was advised by letter from the U.S. Pardon Attorney that his petition for pardon was denied. As a matter of policy, the reason for denying the petition is not disclosed to the petitioner.

1-3-72 Norfolk, Virginia. Possession and Sale of Obscene Films. Six months in jail suspended upon payment of $500.00 fine. According to Mr. Sanza, his sentence would have been more severe had he not agreed to give up his business and get out of town. According to Mr. Sanza, his attorney was a Mr. Schwartz.

11-5-76 Washington, D.C. Sale of Pornographic Material. On 6-21-77, in the Superior Court for the District of Columbia, Judge Robert Scott found Mr. Sanza guilty. On 7-26-77 he was sentenced to one year confinement, suspended and placed on unsupervised probation for three years and ordered to pay a fine within 30 days. Probation records indicate the fine has been paid in full. His attorney was Stanley Dietz. The present federal

PRIOR RECORD:
 Adult.

11-5-76 offense does not appear to be a violation of the Washington, D.C. probation since the 7-6-77 possession of firearms offense occurred before the 7-26-77 probation date.

29. The presentence report dated November 25, 1977 at p. 9 includes the following:

*Mental and Emotional.* Intelligence tests given to the defendant in 1966 while he was in federal prison revealed an I.Q. of 104. His educational level was rated in the sixth grade but he had the potential to increase this level with acquired skills. He is quite knowledgeable in the preparation of food through his vocational experience as a chef.

During the course of this presentence investigation, Mr. Sanza was fairly cooperative, but this officer sensed it was done so under considerable restraint. I am of the opinion that much of this underlying attitude was due to his feeling that he should not have been prosecuted for this present offense and his past association with the federal court system. In fact, during our discussions it was apparent that questions about his past irritated him and responded with "you already know that information from my parole case." This was true in some areas, but since much of the information is some eleven years old we were trying to update and verify the past and present.

After reviewing the record in this case and after giving due consideration to all memoranda and documents filed by counsel for Sanza and counsel for the Government, this Court does not believe that there exists in this case a "close" question concerning the sufficiency of the statement of facts when considered together with all of the other record data which this Court took into account in reaching the conclusion in its December 29, 1980 opinion that "under the standards set forth in *Jackson v. Virginia, supra,* the record contains more than sufficient evidence to sustain a finding of guilt beyond a reasonable doubt of the crime with which Sanza was charged and of which he was convicted and sentenced in the within case." (*See* p. 29 of this Court's aforementioned 12/29/80 opinion).

The authorities cited in the Government's response to Sanza's aforementioned motion, said response having been filed on February 20, 1981, set forth the appropriate applicable standards for the consideration and determination of Sanza's said motion. There would not appear to be any exceptional circumstances in this case which would justify this Court releasing the defendant pending the resolution of the appeal in question.

Insofar as the medical situation is concerned, the documents attached to the defendant's said motion would indicate that the medical matters in question have been under consideration since 1979. Sanza has not proffered any definite plans concerning any surgical or medical procedures to be performed by private physicians. Nor would there appear to be any lack of appropriate medical care available to Sanza within the federal prison system.

Under the circumstances, the aforementioned motion for release of Sanza pending appeal is hereby denied.[1]

---

1. In confirming herein the views set forth by this Court in its Memorandum and Order filed December 29, 1980, this Court has reviewed Judge Davidson's opinion for a unanimous Court of Appeals of Maryland in *Sutton v. State*, 289 Md. 360, 424 A.2d 755 (1981). In that case, the defense counsel, after the case was called to trial, asked the trial judge whether the Court wished "to proceed by way of a guilty plea, on an Alford plea, or a not guilty statement of facts with the defendant not testifying and submitting." (424 A.2d at 756). The Court replied: "Not Guilty statement of facts. * * *" (at 756). Prior thereto, a plea bargain had been entered into between the prosecution and the defendant in which probation was recommended. The case proceeded upon an agreed statement of facts with no defense being raised. Judge Davidson, in an opinion in which the judgment of the Court of Special Appeals of Maryland, which had affirmed the trial court's judgment of conviction, was reversed, wrote (at 759):

> Trying a case on an agreed statement of facts ordinarily does not convert a not guilty plea into a guilty plea. [Citations omitted.] But here the totality of the circumstances, and in particular, the facts that the petitioner's plea was entered at the direction of the trial court and that she was aware that she would be placed on probation, shows that the proceeding was not in any sense a trial and offered no reasonable chance that there would be an acquittal. Under these particular circumstances, the petitioner's plea was the functional equivalent of a guilty plea. * *

In the case at bar, counsel for defendant made it clear that his client did not desire to plead guilty and continued to assert that the gun in question should not be admitted into evidence for Fourth Amendment reasons. Moreover, there was no plea agreement and there was no direction by the Court as to the form the trial should take nor, indeed, as far as the record indicates and as far as this Court has ascertained, was there any indication that the decision of the defendant, based upon the recommendation of his trial counsel to submit the case on an agreed statement of facts and to concentrate, both in the trial court and on appeal in the Fourth Circuit, on the Fourth Amendment issue, was suggested in any way by the prosecution or the Court or was the product or anything other than the thinking of the defendant and of his trial counsel. Accordingly, this would appear to be a case in which the submission of an agreed statement of facts would not convert a not guilty plea into a guilty plea and trigger all of the requirements of Federal Criminal Rule 11 as the Court of Appeals of Maryland in *Sutton* concluded that the presentation in *Sutton* triggered the requirements of Maryland Rule 731 c.