THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
CHESTER MILLS, Appellant.

Second Department, September 24, 1984

APPEARANCES OF COUNSEL

*Warren H. Richmond, III,* for appellant.

*Patrick Henry, District Attorney (Frances A. Sclafani* of
counsel), for respondent.

OPINION OF THE COURT

WEINSTEIN, J.

The instant appeal poses the question of whether Crimi-
nal Term erred in conducting a nonjury trial on a stipu-
lated set of incriminating facts without having first in-
quired of defendant whether he had knowingly and intelli-
gently agreed to the stipulation which, defendant alleges,
was tantamount to a guilty plea with respect to the charges
of which he was ultimately convicted. Assuming, without
actually concluding that the underlying stipulation was

indeed the functional equivalent of a guilty plea, we are of the view that the judgment of conviction should nevertheless be affirmed.

Defendant was indicted by a Suffolk County Grand Jury and charged in indictment number 1148/82 with the crimes of criminal sale of a controlled substance in the third degree (two counts) and criminal possession of a controlled substance in the third degree (two counts). The charges resulted from defendant's participation in a sale of cocaine to an undercover Suffolk County Narcotics Squad officer on December 10, 1981. A nonjury trial on a stipulated set of facts was held before Justice Joseph Jaspan on June 10, 1982.

At the outset of the proceedings, defendant signed a waiver of jury trial in the presence of both the court and defense counsel. Both sides thereafter waived opening statements and the following stipulation was made on the record.

"MR. PERINI [Assistant District Attorney]: Your Honor, I believe we can agree on a stipulation that I would call one — if I were to call one Raymond Kelly, a police officer in the Suffolk County Narcotics squad, he would testify as follows:

"On December 10, 1981, Officer Kelly, with one Detective Manthe and a confidential informant, went to Gloria's Bar in Islip, on Islip Avenue in Central Islip. At that time, in the bar — the confidential informant entered the bar and returned a short time later, advising the undercover police officer that a subject known as Chet would take the undercover police officers to a house in Brentwood to purchase cocaine. The confidential informant reentered the bar, that being Gloria's, and came back outside with a black male by the name of Chester Mills.

"I think we can stipulate that, in fact, is the defendant, also known as Chet.

"MR. SILVERMAN [defense counsel]: So stipulated.

"MR. PERINI: Chet and the confidential informant entered the vehicle of the undercover officer, that being Officer Kelly. There were — Everyone said hello, and Detective Manthe and Officer Kelly then drove Chet, the defendant,

to a house in Brentwood. Chet told Detective Manthe to drive to Marshal Lane and Laurie Lane in Brentwood, New York, and park the vehicle.

"At that time, Chet asked the undersigned — that being Officer Kelly — for $100 for the gram of cocaine. The undercover officer refused to give $100 to Chet and told Chet to go in and get the gram of cocaine and come back.

"The defendant, Chet left the undercover vehicle, went to the end of the street and left the view of the officers. At approximately 3:55 p.m., Chet returned and entered the undercover car and said he could not get a gram fronted, meaning that his —

"THE COURT: No, what your —

"MR. PERINI: His person would not give him the cocaine. The undersigned, Detective Manthe — that being Officer Kelly — and Detective Manthe and the confidential informant and Chet then drove away from the area.

"At 4:05 p.m., Chet agreed to return to the area to go to get a quarter bag of the same as a sample for the undercover police officers. That would be a quarter of a gram of cocaine. At that time, Chet stated that he wanted a couple of lines from the package for doing the deal. Officer Kelly and Detective Manthe agreed to give Chet, the defendant, a couple of lines for doing the deal.

"Chet then exited the undercover vehicle, left the sight of the undercover officers and returned five minutes later. When Chet entered the undercover car, he handed the undersigned — that being Officer Kelly — a folded packet of — a folded paper packet marked, 'One-quarter'.

"Officer Kelly opened the paper packet and Detective Manthe and Officer Kelly examined the white powder. It appeared to be cocaine. At — The time of the pass was 4:15. At 4:18 p.m., Chet exited the undercover car and left — again left the view of the police officers, returning at 4:28.

"When he entered the car, he handed the undercover officers two folded packets, each marked 'A half.' Chet advised the undersigned and Detective Manthe that one of the half-gram packets only had a quarter of a gram. The undersigned, Officer Kelly, and Detective Manthe checked out the packet. It appeared to be cocaine. Officer Kelly then

handed Chet $75, the defendant, Chet, left the view of the officers and returned a short time later, paying his — the person who he had obtained the cocaine from. Chet was, in fact, given a line of cocaine from the package for doing the deal for the officers. And they parted their ways.

"The drugs were taken to the — I think we can stipulate to the chain of custody of the drugs. Officer Kelly kept them on his person until he caused them to go to the Police Lab.

"And if Mark Farley, a chemist with the Police Lab, was called as a witness, he would testify that he analyzed the drugs that were purchased from the defendant and there was the presence of cocaine. It was approximately a quarter of a gram.

"THE COURT: Cocaine in each one?

"MR. PERINI: Yes

"THE COURT: So stipulated?

"MR. SILVERMAN: So stipulated, your Honor."

After so stipulating, the People rested their case and the defense indicated that it had no case to offer. Defense counsel conceded two separate acts of possession which had occurred some moments apart. It was contended that the stipulated facts made out a classic case of agency with the result that defendant could not be found guilty of either of the class B felonies charged, to wit, criminal sale of a controlled substance in the third degree or criminal possession of a controlled substance in the third degree (with intent to sell) (Penal Law, §§ 220.39, 220.16), inasmuch as the defense of agency negated the requisite element of intent. The court indicated that it would consider the lesser included offense of criminal possession of a controlled substance in the seventh degree, a class A misdemeanor (Penal Law, § 220.03).

At the conclusion of the trial, defendant was found not guilty of the crimes charged in the indictment but guilty of two counts of the lesser included offense. In view of defendant's extensive criminal record and unfavorable probation report, he was sentenced to concurrent terms of incarceration of one year.

Defendant's argument on appeal is that the trial court erred in permitting him to be tried on a stipulated set of facts without first inquiring whether he had knowingly and intelligently waived his right to confront and cross-examine the witnesses against him and his right to present evidence in his own behalf. As per defendant's analysis, there is no meaningful distinction between the instant situation and situations requiring such inquiries prior to the acceptance of a guilty plea.

The contention that defendant, by way of a stipulation of uncontroverted facts, waived his right to present evidence on his own behalf is without any merit. The record unequivocally indicates that the defense was afforded an opportunity to present a case after the People had rested. Notwithstanding this opportunity to offer evidence of an exculpatory nature, defense counsel admitted that the defense had no case to present.

The record further reveals that the trial court questioned defendant extensively concerning the waiver of his right to a trial by jury. To require that a trial court interject itself into the case at each new step in order to inquire as to a defendant's understanding, absent any indication of incompetence on the part of defendant or counsel, is utterly unreasonable. We know of no authority in this State which purports to impose such a requirement.

It bears noting that there exists an area of Federal case law which addresses the issue of whether Federal courts are obligated by subdivision (c) of rule 11 of the Federal Rules of Criminal Procedure (in US Code, tit 18, Appendix) to personally advise defendants of the consequences of their decisions to stipulate to facts which are tantamount to the entry of a guilty plea. The pertinent provisions of subdivision (c) of rule 11 are as follows:

"Advice to Defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

"(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole term; and

"(2) if the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceeding against him and, if necessary, one will be appointed to represent him; and

"(3) that he has the right to plead not guilty or to persist in that plea if it has already been made, and that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and

"(4) that if his plea of guilty or nolo contendere is accepted by the court there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial; and

"(5) if the court intends to question the defendant under oath, on the record, and in the presence of counsel about the offense to which he has pleaded, that his answers may later be used against him in a prosecution for perjury or false statement."

While the requirements of rule 11 are, of course, triggered by a plea of guilty or *nolo contendere*, courts have recognized that the principles underlying rule 11 may require similar inquiries where a defendant's claim is the functional equivalent. It has been held, for instance, that rule 11 inquiries may also be required in cases where, by stipulation of fact, a defendant has effectively admitted his or her guilt and waived trial on the crucial issue of guilt or innocence (see *Julian v United States,* 236 F2d 155 [CA 6th]; *United States v Brown,* 428 F2d 1100 [CA DC] [where defendant suffered from a mental disorder]; *Rucker v United States,* 280 F2d 623 [CA DC] [where defendant was subsequently found to be of unsound mind and incompetent to understand the proceedings against him]). Both the Eighth and Ninth Circuits have ruled that stipulations regarding a defendant's prior convictions are the functional equivalents of a guilty plea to a separate charge. The admission into evidence of such stipulations without appropriate inquiries concerning the defendant's knowledge and consent amounts to constitutional error (*Cox v Hutto,* 589 F2d 394 [CA 8th]; *Wright v Craven,* 461 F2d 1109 [CA 9th]).

In a more recent case, however, the Eighth Circuit specifically rejected a defendant's contention that trial courts should not be permitted to enter a judgment on stipulated facts (*United States v Wray,* 608 F2d 722, cert den 444 US 1048). As per the language of the court (p 724): "The defendant is attempting to equate his case, in which he entered a plea of not guilty but was convicted and sentenced based on the judge's application of the law to the stipulated facts, to a situation where an accused is sentenced following a plea of guilty or nolo contendere. These are simply not comparable situations * * * The submission on stipulation is a practical and expeditious procedure which is employed in lieu of a formal bench trial when the essential facts in a case are uncontested. We are absolutely convinced of the absence of any impropriety in its use."

The competing considerations entailed in determining the applicability of rule 11 in any instance where a stipulation as to most or all of the factual elements necessary to establish proof of guilt has been tendered have been succinctly summarized in *Witherspoon v United States* (633 F2d 1247, 1251 [CA 6th], cert den 450 US 933): "Like the courts which have considered this problem before, we do not wish to lay down a rule which would require the full application of Rule 11 on every occasion in a contested case where a stipulation of one or more facts is tendered. Nor do we wish this court or the district courts in this circuit to be insensitive to the values which Rule 11 protects when accepting a stipulation such as this one which serves to waive trial of all elements of the crime charged and to submit for adjudication only a legal argument on failure of which a guilty finding would result."

Defendants who wish to proceed to trial on a stipulated set of facts are by no means left unprotected. It is the general responsibility of the Trial Judge, when accepting a stipulation or waiver, to insure that it is voluntarily and knowingly made (*United States v Stalder,* 696 F2d 59 [CA 8th]; *United States v Miller,* 588 F2d 1256 [CA 9th], cert den 440 US 947).

The weight of existing authority is clearly against the imposition of an immutable rule requiring a personal statement from a defendant that he or she knowingly and

intelligently agreed to be tried on stipulated facts which effectively establish his or her guilt (see *United States v Tobin,* 701 F2d 1108, 1110 [CA 4th]; *United States v Robertson,* 698 F2d 703, 709 [CA 5th]; *United States v Lawson,* 682 F2d 1012, 1016 [CA DC]; *Witherspoon v United States, supra; United States v Ferreboeuf,* 632 F2d 832, 836 [CA 9th], cert den 450 US 934; *United States v Gray,* 626 F2d 102, 106 [CA 9th]; *United States v Stapleton,* 600 F2d 780, 782 [CA 9th]; *United States v Strother,* 578 F2d 397, 404 [CA DC]; *United States v Lawriw,* 568 F2d 98, 105, n 13 [CA 8th], cert den 435 US 969, reh den 436 US 951; *United States v Terrack,* 515 F2d 558 [CA 9th]; *United States v Dorsey,* 449 F2d 1104, 1107-1108 [CA DC]). To require otherwise would be to unduly encumber trials. As expressed by the Ninth Circuit in *United States v Terrack* (*supra,* p 561, n 3): "To require a Rule 11 examination on every stipulation containing a vital admission of the defendant would add ritualistic formalities where none are needed nor required * * * If Rule 11 were to be applied only to stipulations constituting de facto pleas of guilty, when and how is that determination made? Every stipulation of a vital fact is an admission tending to establish guilt. Rule 11 specifically applies to pleas of guilty and *nolo contendere* and not to trials. These are areas with a clear division between them. They are either black or white. To create a gray area where stipulations, as a part of a trial, would be governed by the rules on the acceptance of pleas would further complicate the trial judge's duties and push him further into the role of an advocate."

The situation at bar is not unlike that in *United States v Sanza* (519 F Supp 26, 31 [D Md]), where the defendant's conviction was predicated on an agreed upon statement of facts. The court therein noted that a defendant need not personally waive each and every one of his rights, including the right to require that the government establish its case in the normal way, subject to the defendant's right to confrontation. Rather, defense counsel may speak for a client who is entering into stipulations.

In that case, there was no reason to believe, in view of the defendant's prior experience with the criminal process, that he did not fully understand either the advice which he

received from the court and counsel or the choices made on his behalf and the reasons therefor. Likewise in the instant case, defendant has had an extensive involvement with the criminal justice system. During the 10-year interval prior to the time the instant indictment was handed up, defendant had approximately nine arrests as well as an extensive history of vehicle and traffic offenses. During the period of time between the nonjury trial and the imposition of sentence, defendant was arrested for another crime committed while he was awaiting sentence. It is thus evident that defendant was a veteran of the criminal justice system who was well versed in the procedures of plea negotiations and dispositions, jury trials and sentencing. In view of defendant's background and since he was represented by competent trial counsel and was afforded an opportunity to present evidence in his defense, the possibility that defendant's agreement to the stipulation was other than knowing and voluntary is effectively negated. To require the recitation of some uniform mandatory catechism prior to a trial on stipulated facts, when no such requirement exists in this State even as to defendants entering guilty pleas (*People v Harris,* 61 NY2d 9, 17; *People v Nixon,* 21 NY2d 338, 353, cert den *sub nom. Robinson v New York,* 393 US 1067) is to confuse criminal justice with unnecessary formalism.

The Court of Appeals in *People v Harris* (*supra*) has expressly renounced a construction of *Boykin v Alabama* (395 US 238) which would impose upon Trial Judges, as a prerequisite to accepting a guilty plea, an immutable duty to expressly apprise defendants of their right to a jury trial, the privilege against compulsory self incrimination and their rights to confront accusers and to obtain explicit waivers thereof. As per the language of the court (61 NY2d, at p 19): "[A] detailed articulation and waiver of the three rights mentioned in *Boykin* is not constitutionally mandated * * * The clear import of *Boykin* and its progeny is that the Trial Judge has a vital responsibility 'to make sure [that the accused] has [a] full understanding of what the plea connotes and of its consequence' (*Boykin v Alabama, supra,* at p 244), not that a new procedural requirement has been imposed, mandating the Trial Judge's ritualistic recitation of the rights waived upon a guilty plea".

Such variable factors as the experience, sophistication and intellectual capacity of the defendant, the seriousness of the crime, the nature of the crime as understood by laymen and the competence of counsel play a significant role in ascertaining the extent of the inquiry which should be conducted. In certain instances, even the most rigorous standards would be inadequate while, in cases such as the instant one, a requirement comparable to that imposed by rule 11 of the Federal Rules of Criminal Procedure would be superfluous.

In sum, inasmuch as there is no constitutional or statutory requirement imposing upon trial courts accepting guilty pleas the stringent duty of inquiry which defendant maintains is mandatory in the instant case involving a stipulated set of facts, we find that no error has been committed. As with inquiries pertaining to the voluntariness of guilty pleas, " ' "[m]atters of reality, and not mere ritual, should be controlling" ' " (*People v Harris, supra,* p 18, citing *McCarthy v United States,* 394 US 459, 467-468, n 20; *Kennedy v United States,* 397 F2d 16, 17). Consequently, "[t]hese are all matters best left to the discretion of the court" (*People v Nixon,* 21 NY2d 338, 353, cert den *sub nom. Robinson v New York,* 393 US 1067, *supra*).

Carrying defendant's proposed analogy one step further, we note that it is well settled that where defendants have failed to raise any issues regarding the validity of their guilty pleas by motion to vacate or otherwise in the court of first instance, their subsequent claims to be relieved of the consequences thereof have been held not preserved for appellate review (*People v Pellegrino,* 60 NY2d 636, 637; *People v Pascale,* 48 NY2d 997, 998; *People v Warren,* 47 NY2d 740, 741; *People v Bell,* 47 NY2d 839, 840; *People v Collins,* 97 AD2d 828). Somewhat similarly, it is our view that defendant's failure to move vis-à-vis his stipulation prior to the imposition of sentence should likewise be held to constitute an effective waiver of the issues which he now seeks to raise.

Notwithstanding the fact that defendant has already served the term of imprisonment imposed upon him, we do not subscribe to the People's contention that the instant

appeal has been rendered moot. As set forth by the Supreme Court in *Sibron v New York* (392 US 40, 57): "[A] criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." The People have made no effort to discount the possibility of collateral legal consequences which might emanate from defendant's conviction. Moreover, this is not a case in which the length of the sentence imposed is the sole subject of the challenge (cf. *People v Rosen,* 23 AD2d 970).

Accordingly, the judgment of conviction should be affirmed.

GIBBONS, J. P., and THOMPSON, J., concur with WEINSTEIN, J.; BROWN, J., concurs in the result.

Judgment of the Supreme Court, Suffolk County, rendered August 17, 1982, affirmed.